Manuel CORTINAS,
Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Southwest Region,
Respondent–Appellee.

No. 91–5529
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1991.

Manuel Cortinas, pro se.

LeRoy Morgan Jahn, Ellen A. Lockwood, Asst. U.S. Attys., San Antonio, Tex., for respondent-appellee.

Before DAVIS, SMITH, and DUHÉ, Circuit Judges.

PER CURIAM:

Manuel Cortinas appeals the denial of habeas corpus relief regarding the revocation of his parole. Finding no error, we affirm.

I.

Cortinas filed this action pursuant to 28 U.S.C. § 2241 alleging that various of his rights had been violated by the United States Parole Commission (the Commission) when his special parole was revoked in 1987. Cortinas was originally convicted in 1977 of possession with intent to distribute cocaine, sentenced to a ten-year prison term plus a ten-year term of special parole, and released on regular parole in 1979. In 1982, the Commission terminated the regular parole term and started his term of special parole.

On June 6, 1983, Cortinas's probation officer learned that he had been arrested on June 3, 1983, for driving while intoxicated (DWI). As a result of this arrest, Cortinas's parole terms were amended to include the requirement that he participate in an alcoholism treatment program.

On July 7, 1987, Cortinas was arrested and charged with possession of approximately forty pounds of marihuana. The Commission issued a parole violation warrant on July 31, 1987. The charges in the warrant application included the June 3, 1983, DWI arrest and Cortinas's failure to report that arrest to his probation officer. The warrant also included charges relating to the 1987 arrest, namely, possession of marihuana, associating with persons engaged in criminal activity, and possession of an unauthorized firearm. On August 18, 1987, the parole violation warrant application was supplemented to include the additional charge that Cortinas had been found guilty on the earlier DWI charge on October 13, 1983.

The Commission decided, after a hearing, that Cortinas's special parole should be revoked because of the 1983 DWI conviction and the possession of an unauthorized firearm and association with others engaging in criminal activity in 1987. (The marihuana charges stemming from the 1987 arrest had been dropped in state court for lack of evidence.)

Cortinas's special parole was revoked on October 27, 1987. He received no credit for any of the time he had served on special parole. He was returned to prison with a presumptive parole release date of December 7, 1988. Cortinas pursued an appeal to the National Appeals Board, which affirmed the Commission's decision. Cortinas was released in December 1988, but special parole has been revoked at least once since then.

Cortinas filed this action, which he denominated a petition for habeas corpus relief, alleging that (1) the four years between his 1983 DWI offense and the issuance in 1987 of a parole violator warrant based upon that offense represented an unfair delay; (2) the forfeiture of his street time was an impermissible *ex post facto* application of a regulation that was amended after he committed his original offense of conviction; (3) the use of the 1983 DWI offense violated double jeopardy because the Commission had already used the offense in 1983 to alter the conditions of his special parole to require serving in an alcohol treatment center; and (4) the Commission did not have the jurisdictional authority to revoke his special parole. Upon the report and recommendation of the magistrate, to which Cortinas filed no objections, the district court dismissed the action, finding all of Cortinas's claims to be without merit.

## II.

### A.

▉ Cortinas contends that the more than four-year delay between the 1983 DWI offense and the issuance in 1987 of the violator warrant including that offense was unreasonable, inherently prejudicial, and operated to his "severe detriment." He asserts that the Commission could permit a person to remain on special parole for several years after discovering a violation and then later institute revocation proceedings, requiring the parolee to lose the street time that he accumulated while he was on parole during the time the Commission knew about his violation.

Under 18 U.S.C. § 4213(b) (repealed effective Nov. 1, 1987), a warrant or summons for a parole violation "shall be issued by the Commission as soon as practicable after discovery of the alleged violation." There are no cases on point in this circuit addressing delay in the period between discovery of a violation and issuance of the parole violation warrant. The Eighth Circuit, however, addressed an argument similar to Cortinas's in *White v. United States Parole Comm'n*, 856 F.2d 59, 61 (8th Cir. 1988) (per curiam), determining that the two-year delay between a violation and the issuance of the warrant was not unreasonable. The court further noted that the original decision not to issue a warrant was reasonable but also was subject to re-evaluation in light of additional and similar violations that the parolee later committed. *Id.* Finally, the court noted that the parolee would have to allege some prejudice resulting from the delay, such as prejudice in the ability to challenge the earlier violations or to produce evidence of mitigating circumstances. *Id.*[1]

Cortinas has made no specific allegations of prejudice. He does not contest that his special parole status was validly revoked,

nor does he assert that his ability to present facts or contest the violation was affected by the delay. Additionally, although he asserts that he was prejudiced by the loss of his street time, Cortinas's street time would still have been subject to mandatory forfeiture even without inclusion of the 1983 DWI offense because of his other violations included in the 1987 parole violator warrant that he was found to have violated. As such, he has failed to demonstrate that the delay, even if unreasonable, prejudiced him in any way. Finding the analysis in *White* persuasive, we conclude that this claim does not warrant relief.

### B.

▉ Cortinas contends that the Commission should not have forfeited the street time he accumulated while he was on special parole prior to his 1987 revocation. In support of this claim, he asserts that the rule relied upon to effect the forfeiture of his street time, 28 C.F.R. § 2.57, was revised to his detriment in 1977, several months after his original conviction.

Initially, it should be noted that the change in regulation pertaining to mandatory forfeiture of street time following revocation of special parole occurred in 1989, as discussed *infra*. This appears to be the change of which Cortinas complains. Although he posits a change that occurred in 1977, just after his original conviction, research reveals no change in section 2.57 that would have pertained to Cortinas's claim of an *ex post facto* violation relative to forfeiting accumulated street time. *See* 42 Fed.Reg. 39,809 (1977); 44 Fed.Reg. 3410 (1977) (amending section 2.57 regarding timing of revocation hearing). We thus explore the later amendment of section 2.57

---

1. *See United States v. Wickham*, 618 F.2d 1307, 1310 (9th Cir.1979) (requiring demonstration of prejudice by showing impaired ability to contest alleged violation or showing adverse effect upon ability to present favorable evidence); *see also Heath v. United States Parole Comm'n*, 788 F.2d 85, 89 (2d Cir.) (delay between issuance of warrant and revocation hearing must have resulted in prejudice to warrant habeas relief (citing, *inter alia, Lambert v. Warden, United States Penitentiary*, 591 F.2d 4, 7–8 (5th Cir.1979) (per curiam) (failure of Commission to comply with statutory time limits does not entitle parolee to habeas relief))), *cert. denied*, 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986).

that appears to correspond to Cortinas's claim.

Previously, the Commission applied the terms of 18 U.S.C. § 4210(b) and (c) to both regular and special parole revocations; the result was that street time was not automatically forfeited in special parole revocations. *See Munguia v. United States Parole Comm'n*, 871 F.2d 517, 521 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989). Apparently, the Commission was misinterpreting 21 U.S.C. § 841(c), which provided, even prior to Cortinas's offense, that

> [a] special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole.

The Commission changed its practice with regard to section 841(c) by amending section 2.57 in 1989 to provide that a special parole term violator who falls under the provisions of 21 U.S.C. § 841(c) shall receive no credit for street time. *See* 54 Fed.Reg. 11,689 (1989) (discussing change in section 2.57 and prior Commission practice).

The new regulation emphasizing the proper interpretation of section 841(c) requiring mandatory forfeiture of street time does not constitute an *ex post facto* violation. Although this circuit has not directly addressed the issue, the Second Circuit has confronted it squarely, and we adopt that court's analysis. In *Caballery v. United States Parole Comm'n*, 673 F.2d 43, 43–44, 47 (2d Cir.), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), the court held that a parolee could not base an *ex post facto* claim upon a new regulation correcting a practice of the Commission that had been contrary to an already existing statutory provision. The court concluded that an agency's misinterpretation of a statute cannot support an *ex post facto* claim. *Id.*

In *Munguia*, 871 F.2d at 520, we held that 21 U.S.C. § 841(c) requires mandatory forfeiture of street time spent on parole for special parole violators who, like Cortinas, were convicted under section 841. *Munguia*, 871 F.2d at 520. Thus, the new language of section 2.57(c) corrected the previously erroneous practice of applying section 4210(b)(2) and (c) to special parole violators. As *Munguia* made apparent, section 4210(b) and (c), enacted after section 841(c) was already in existence, were not designed to supersede section 841(c) regarding forfeiture of street time under special parole. Section 841(c) already was in existence and applied to Cortinas at the time his offense was committed and at the time he committed the parole violation, even though the Commission had not been correctly applying section 841(c). *See Munguia*, 871 F.2d at 520. Thus, under the analysis of *Caballery*, the amendment of section 2.57 to correct the agency's interpretation of section 841(c) cannot support Cortinas's claim of an *ex post facto* violation.

### C.

■ Cortinas contends that the use of his 1983 DWI conviction in the 1987 warrant violates the prohibition against double jeopardy because the offense had already been used to alter the conditions of his special parole in 1983. He essentially contends that, because the Commission already had used the DWI offense to punish him by requiring him to attend an alcohol treatment program, it could not use the offense again to revoke his parole in 1987.

The question is whether the Commission can use the same conduct to effect two different changes to parole status, in this case the alteration of his conditions of parole in 1983 followed by the revocation in 1987. Authority in this circuit suggests that no double jeopardy violation is presented by these circumstances. In *United States v. Whitney*, 649 F.2d 296, 298 (5th Cir. Unit B June 1981) (per curiam), we held that double jeopardy does not bar consideration of certain evidence in probation revocation proceedings where the

same evidence formed the basis for a previous parole revocation proceeding. We reasoned that the primary purpose of parole revocation proceedings is not to punish a violation of a criminal law, but to determine whether a violation of the terms of parole has occurred, notwithstanding the fact that parole revocation might result in further imprisonment. *Id.*

Cortinas's argument is undercut further by the fact of his other parole violations that provided an independent ground for his revocation in 1987. The possession of the unauthorized firearm and the association with others engaged in criminal activity were parole violations that warranted revocation of the special parole term. Even assuming *arguendo* that double jeopardy principles have any application in this context, there were charges other than the 1983 DWI offense that the Commission proved and that warranted revocation of Cortinas's special parole. Thus, there was no violation of double jeopardy.

### D.

 Cortinas contends that the Commission did not have the requisite authority to revoke his parole and to forfeit his street time. He bases his argument upon the fact that neither 21 U.S.C. § 841(c) nor 18 U.S.C. § 4210 contains a specific delegation to the Commission of the administration of special parole.

In *Battle v. United States Parole Comm'n*, 834 F.2d 419, 420 (5th Cir.1987) (per curiam), we resolved the same claim by noting that, although several courts had held that district courts have the authority to revoke parole, that jurisdiction is not exclusive with those courts. We concluded that there was no authority for the proposition that the Commission has no jurisdiction to act with regard to parole revocation. Cortinas remarks on the "dubious validity" of 28 C.F.R. section 2.57, which in this regard states that the Commission has the same authority to act with respect to revocation and other special parole term proceedings as it does with regard to regular parole.

Cortinas does not provide any indication why this regulation is of "dubious validity," however. Moreover, in *Battle* we noted that "the authority of the Parole Commission pursuant to these regulations has been unquestioned by the courts." 834 F.2d at 420 (citing cases). Thus, contrary to Cortinas's assertion that *Battle* is inadequate to dispose of his claim because it relies upon a regulation that the Commission itself drafted to confer jurisdiction, *Battle* relies upon the courts' unquestioning reliance upon the authority of the Commission under these regulations and not simply upon the particular regulation itself.

AFFIRMED.